Good morning everyone. Judge Rovner, good morning to you. Good morning everyone. Good morning to you and to Judge Lee. Good morning. We have six cases on today's argument calendar. The court will take a brief ten-minute recess after the second argument. We'll begin with Appeal Number 23-3268, Michael Williams v. Dylon Radtke. Mr. Andrag. Good morning, judges of the Seventh Circuit. Good morning, counsel. My name is Rex Andrag and I represent the petitioner appellant, in this case, Michael Williams. We appreciate the opportunity to be here this morning. At its core, this case is about the reasonable doubt standard that Winship held is a due process protection in criminal cases. More specifically, it's about how that standard is animated in the form of a jury instruction so it can be properly applied to a particular case by a criminal jury. The United States Supreme Court recognized in both Cage and Sullivan that if a jury instruction does not properly convey Winship's concept of reasonable doubt and unfairly dilutes it, it's a due process violation that requires the conviction be reversed. The question ultimately under Victor is whether there's a reasonable likelihood that the jury instruction is understood to allow conviction based on proof insufficient to meet the Winship standard. Mr. Andrag, forgive me. The jury instructions were quite lengthy and did include multiple directives that seem favorable to Mr. Williams. How then do you believe, in the context of all these favorable directives, could the one sentence permit the jury to convict Mr. Williams with certainty that, you know, it is less than beyond a reasonable doubt? It is true that the instructions, Judge Rovner, in various places correctly state the burden of proof, and that reasonable doubt, for example, is embedded in the substantive instruction. And the jurors were told that it was their duty to give Mr. Williams the benefit of every reasonable doubt. But the problem here, in my opinion, is not with the definitional aspects of this instruction. The problem is sort of with the operating instructions that the jury was given. Because after telling the jury that the state is required to prove guilt beyond a reasonable doubt, the jury then essentially was told not to examine the evidence for reasonable doubt. But that's exactly what a criminal jury must do to breathe life into the reasonable doubt standard. If you're instructing the jury not to do that, I think you're effectively canceling out the applicable burden of proof or really diluting it. All it really takes is one juror to hear that instruction and that command and decide that, well, she should not scrutinize the evidence for doubt. And then you've got, I think, the right to a trial by a jury is violated. And I think it's bad enough you tell the jury not to scrutinize the evidence for doubt. I think it's much worse when simultaneously you instruct the jury that what they really should be doing is looking for the truth. Mr. Hendrick, if you focus on the standard that Congress has supplied in Section 2254D, do you agree that the jury instruction that is being challenged here is not contrary to any U.S. Supreme Court precedent? I do agree. Okay. And so, therefore, the question becomes with respect to the Trammell decision, right, which is, you know, by extension the reasoning that the Wisconsin Court of Appeals adopted here, what U.S. Supreme Court precedent do you believe Trammell reflects an unreasonable application of? I believe it reflects an unreasonable application of Winship. I believe it also reflects an unreasonable application of Victor.  And Winship is pertinent to the inquiry, but Victor is much more on point in the universe of a beyond a reasonable doubt instruction. What aspect of Victor do you believe Trammell can't be squared with? I think that it can't be, and I think Victor kind of is repeating this from the Holland case. I don't think it can be squared with the idea that you take a look at the instruction as a whole. I don't think Wisconsin has ever really given serious attention to the problems with the jury instruction in this case. Of course, the Court of Appeals just relied on Trammell, and that was appropriate in this particular case. Trammell, however, focused mostly on these two research studies that apparently suggested that this type of instruction is more likely to lead to false convictions. But if you go back to what you just said, the point you just made, you made in response to Judge Roedner's question, too, and that is you seem to acknowledge that you should read the instruction as a whole and not just focus on one particular sentence. Correct. Okay. If you do that, I have Victor in my hands right now. What aspect of the Trammell reasoning reflects an unreasonable application of the principles the U.S. Supreme Court relied upon in Victor? Well, first of all, I think Trammell did recognize that the unreasonable application, I think, is sort of the fact that if you read the instruction, I think reading the instruction as a whole, you've got, as I stated before, you've got a reasonable doubt standard that's sort of set forth correctly. But I don't think that Trammell really understood that if you read the, and it's really the Avila case. That may be, but you, but I, I mean, maybe I'm mistaken, but I think you have to cast your arguments in terms of air vis-a-vis U.S. Supreme Court precedent. And the reason I'm saying that is because of the language of 2254 D.1. Right. I think what I, the way that I see it is that we've got a situation here where you've got, it's really not, well, one thing I want to point out to the court that I think is really important is that one thing that neither Trammell nor Avila, and I think Avila is really the last Wisconsin Supreme Court decision to actually address this issue, because Trammell really didn't address the issues that we're raising here. But I think the problem is, for example, there's language in this jury instruction that was not addressed by Trammell. And that's specifically the language where the judge said just before the jury retired, let your verdict speak the truth. And that language was not examined by Trammell, was not examined by Avila. They were just looking at the language that said, your job is to search for the truth. And I think that it's much more forceful. I mean, I think there's a meaningful difference between searching for the truth and then telling the jury. I mean, that's sort of like the job that they're supposed to do. I hear you. I'll just ask the question one more time. You have to prevail, in my view. You have to demonstrate that the Wisconsin Court of Appeals decision reflected an unreasonable application of U.S. Supreme Court precedent. I think the unreasonable. It's the only way, for better or worse. I think the unreasonable application is that when it examined the question of whether the instruction as a whole was reasonably likely to allow the jury to convict on less than the Winship standard, it really didn't examine. It basically just said, here's the instruction as a whole. And we think that it's OK because it's got all of this other stuff, all of the proper reasonable doubt definitions and so forth. But it didn't really examine what telling the jury not to search for doubt does. It just kind of looked at the thing as a whole and then simply sort of stated in conclusory fashion that because all of this other stuff is here, we think this instruction is OK. Without ever actually examining what this language of don't search for doubt, search for the truth, what kind of an impact that's going to have on a jury? Mr. Hendrick, do you think that the placement of the last sentence makes it even more problematic? In other words, there's this long instruction and at the very end of the instruction, it says you are to search for the truth. Do you think that the placement that the jury leaves with truth ringing in its ears? I do think that's problematic. It's sort of the recency bias. I think in this particular case, it's even worse that after we had the improper remarks by the prosecutor, the court came back and reiterated that language and that's when we got to let your verdict speak the truth. And the problem I have is that the jury may have been properly told about the reasonable doubt standard and may have been given a proper definition of reasonable doubt. But if its marching orders are to go and let your verdict speak the truth, I don't know how a defendant can get an acquittal unless the jury makes a determination that his innocence is the truth. So again, I think the definitional aspects of the instruction are okay. It's just the operational aspects of this instruction that concern me. So in that operative sentence that we're focusing on, if the trial court had admitted you are not to search for doubt and simply state while it is your duty to give the defendant the benefit of every reasonable doubt, you are to search for the truth, do you still find that problematic? I do find that problematic, the search for the truth language. And I guess my question, echoing what Judge Scudder said, is Victor talks about moral truth and truth and whatnot. And I'm wondering why you think instructing a jury to say that you are to give every reasonable doubt and you are to search for the truth, how is that inconsistent with the court's holding in Victor? Because I think, and I don't know if it's Victor so much as it may be more Winship, our cases in this court has said that ultimately a trial is about a search for the truth. But I think that when that was said in those cases, it was with regard to testimony and there was some discussion about cross-examination and I think the rules of evidence and so forth is all sort of designed to get at the truth when testimony is being offered. But truth is not the touchstone, nothing in the Constitution makes searching for or finding the truth a criminal jury's deliberative task. We have, I think that we sort of hope that ultimately this system leads to the truth more often than not, but I don't think that jury trials are really meant to be, in a criminal context, a search for the truth. Before you have to go, and you know time fleets, I wanted to, I really wanted to ask you about the prosecutor's comments. I understand from the court reporter's transcript that Mr. Williams objected to the prosecutors calling his defense moldy, old, ratty, but when the sidebar was over and the prosecutor continued, why didn't Williams' attorney not object to the five pieces of evidence for which the state claimed he had no answer? And because there was no objection at that point, why didn't, why hasn't he forfeited his objection to the prosecutor's statements that he had no answer to those five pieces of evidence? And I also was wondering, of the five pieces of evidence which the prosecutor claimed he had no answer for, which claim from the prosecutor most directly commented on his choice not to testify, or did all of them in your view? I think all of them did in my view, and I sort of viewed, I understand what you're saying, Judge, that there was no specific objection made after the fact about those five particular comments, but I sort of viewed that this whole idea of a ratty, old, moldy, old defense that doesn't have any good evidence, and that's why you get that kind of a ratty, old, moldy defense. I think that the five comments by the prosecutor were just sort of an extension of that. I wish the record had been more specific that he was objecting to those five remarks, but I read the record as being an objection to the whole thing, and he moved for a mistrial. So, I see I'm out of time. I don't know if you want me to continue, Judge. I'm not sure I answered the entirety of your question, but . . . Okay, Mr. Andre, thank you. We'll give you one minute of rebuttal time. Okay, thank you. You can come back. Okay. Mr. Conway, good morning. Good morning, and may it please the Court. I'm Michael Conway on behalf of the respondent, Dylan Radtke. This Court should affirm the magistrate judge's order denying Mr. Williams' petition for federal habeas relief. And as this Court was getting at, the magistrate judge correctly denied the reasonable doubt instruction claim because the state court did not unreasonably apply Victor in determining that the reasonable doubt instruction as a whole accurately conveyed the state's burden of proof. You know, I take it that the Wisconsin pattern instruction, you know, J.I. 140, is given as a matter of course in Wisconsin trial courts. Is that correct? That is correct. I really found that quote in footnote three of the appellant's brief from the University of Pittsburgh Law Review striking that Wisconsin is the home of probably the most constitutionally defective burden of proof instruction in the country. How would you respond? I would respond that that was the opinion of one academic. And here under section 2254, we're looking at whether Victor was unreasonably applied. And a thing I think is really important to note about Victor is that Victor disapproved the use of moral certainty. They looked at the instruction as a whole and considered it and said, please don't use this anymore. It puts your instructions at risk. But even if it is imprudent, it is not unconstitutional. And here we need – Mr. Williams has not even established a fair-minded disagreement among the lower courts about the use of truth language. There is certainly cases where it's grudging acceptance of the use of the truth, but not even the lower courts have been saying truth vitiates an otherwise valid reasonable doubt instruction. Well, Williams posits that the instruction pitted the concepts of doubt and truth against each other, and it appears that at least two of the Wisconsin Supreme Court justices may have agreed with him. Why isn't that in an accurate view of the instruction? Sure. What I think the best way to understand the instruction, especially as you go through each paragraph of the pattern instruction, is the telling the jury not to put a thumb on the scale in favor of a guilty verdict or a not guilty verdict. So it says, do not give the presumption of innocence. A reasonable hypothesis consistent with innocence requires acquittal. But a reasonable doubt does not arise from guesswork or speculation or from sympathy. And then that – those final two sentences are the summary. While it is your duty to give the benefit to benefit every reasonable doubt, don't put your thumb on the scale in favor of guilt. You are not to search for doubt. Don't put your thumb on the scale in favor of not guilty. And the instruction decides for – whether you may find it imprudent or not, not to leave the jury with just two negatives. It opts to give an affirmative direction to guide their deliberations. You are to search for the truth. And so that is why I do not think they're in tension. I think they're complementary. And at this trial, the truth of disputed factual issues was important. Was jailhouse informant Antoine Jackson telling the truth? Was Miguel Henderson's eyewitness identification truthful? And, in fact, Mr. Williams presented through other witnesses an alternative account. He claimed he was shot somewhere else, not with the Red Ford Expedition, and the jury had to decide whether that was truthful. So as the trier of fact, the jury's job was to resolve these disputes, and it was perfectly reasonable to tell them to resolve those disputes as best they could with an eye on the truth. If the jury was instructed you are not to search for reasonable doubt, you are to search for the truth, would Williams be entitled to relief? That would be a tougher case. I still don't think it would be an unreasonable application of Victor because of how Victor resolved the challenges to the moral certainty clause. Because Mr. Williams really makes similar challenges to the search for the truth, or the idea of not searching for doubt, searching for the truth, that the defendants in Victor are lodged against moral certainty. That it invites a verdict without being convinced beyond a reasonable doubt, and that it invites consideration of factors outside of evidence. The same reasons that the Supreme Court in Victor rejected those challenges I think apply here. We have valid definitions of reasonable doubt alongside the use of truth, and in Victor that was important because it couched moral certainty in the proper reasonable doubt definition. So isn't that point, which is a point that Judge Rovner was eliciting a little bit earlier in our dialogue, isn't that the narrowest path through this? That the truth searching language in and of itself may be problematic, but the analytical approach that the Supreme Court adopted in Victor is to take the challenge language in the context of the instruction as a whole. And when you do that here, it's hard to see legal error by the Wisconsin Court of Appeals vis-a-vis Victor under the standard of 2254 D1. That's the narrowest path through it, and it may, perhaps the Wisconsin Supreme Court will revisit the prudence of that last sentence, but in this particular case it's here. Correct. I absolutely agree. And I know also that the court was asking about the role of the search for truth sentence at the end of the instruction, and that is somewhat distinct from Victor. But I want to refer – I omitted an instruction from my brief that I think is relevant to this question. It's a standard instruction that came right after the curative instruction, page 75 of that transcript. And the judge told the jury, justice through trial by jury depends upon the willingness of each of you to seek the truth as to the facts and the same evidence presented to all of you, and to arrive at a verdict applying the rules of law as given in the instructions of the court. So that is one of the last things that the jury heard from the court, and that I think alleviates any concern, particularly under the 2254 standard we're with that the search for the truth at the end of an otherwise valid instruction vitiated the rest of that instruction. Would you like to go on to the prosecutor's comments? I'm happy to, yes. With which I seem to be obsessed, yes. Yeah. I would like to address your question first about the forfeiture question. The state argued in direct appeal that the claim was forfeited, but the Court of Appeals did address the no answer comments on the merits along with the Moldy Ratty defense comment. And so we – the respondent here has treated it as addressed. But I think the fact that defense counsel did not object underscores that the comments were perhaps inartfully phrased a proper response under Darden v. Wainwright. And that's really clear because the phrase that the prosecutor uses before his litany of no answer comments was the thrust of defendant's argument is the police did a bad job. And then the no answers are not in response to Mr. Williams did not testify, but defense counsel's argument did not address these elements. How exactly does telling a jury that Williams has no answer for certain pieces of circumstantial evidence and calling his defense old Moldy and Ratty assure the jury? That the police investigation was done thoroughly and properly. I mean, it seems to me that assuring a jury that the police investigation was done properly, or at least in line with the proper procedures, would have been a more appropriate way to respond to Williams' claims that the investigation had multiple shortcomings. And that the comments the prosecutor made had very little indeed to do with the police investigation and much more to do with Williams' defense. I mean, I have a bit of a problem there. I think I would say the prosecutor's comments were centered on the evidence presented at trial. And that evidence was obtained through the police investigation. The defense's argument was they did not do these other steps. And the prosecutor said, well, no, but they found this evidence of guilt that they're trying to ignore because it's not compatible with their argument. The no answer is not the ideal way of putting that. Well, do you agree the no answer comments that Judge Robner is referring to, that they were improper? Do you at least agree with that? Yes, yes. If they were improper, then why weren't they burden shifting or at the very top on a defendant's choice not to testify? Well, first, because it was referring to the defendant's argument. The defense counsel had just made the argument, and it was referring to that. So it was not referring to the defendant's decision not to testify. And it's also relevant that while the defendant did not testify, the defendant did present an alternative account through police officer witnesses, that he was shot somewhere else. And that's why he ended up at the hospital with a gunshot wound and bloody camouflaged pants. So there was contesting narratives at trial. And in order to respond to that alternative, or it's proper to respond to an alternative narrative and say it wasn't supported. And as it was, all that was supporting that he was shot at that alternative location was one anonymous report of a shooting. The police investigated the scene and found no ballistic evidence. And Mr. Jackson testified that Mr. Williams had told him that he directed his wife to take the gun and fire it off somewhere. So there were competing narratives. And given that, I don't think this can be an implicit suggestion that Mr. Williams should have testified. I think that perhaps the narrowest way to affirming on this case is to look at this court's decision in Bartlett v. Battaglia. It really is the same standard here about a prosecutor's improper comments on rebuttal regarding the reasonable doubt standard. And there are more mitigating circumstances here than in Bartlett. And this court affirmed the rejection of the claim in Bartlett too. Most specifically, I think, there is a curative instruction here. And there was not in Bartlett. We also had the reasonable doubt standard and the defendant's right not to testify woven in throughout trial. Like there was – in Voir dire, there was significant discussion about it that led the trial court to interject and clarify, look, the defense doesn't have to do anything. The court says that bluntly in the curative instruction. The defendant can just do nothing. If the state court in Bartlett did not unreasonably apply Darden v. Wainwright, then I think it follows that the state court in this case did not unreasonably apply Darden either. I have addressed everything I wish to say. I have a minute ten to answer any further questions you'd like. Then I would simply ask this court to affirm. Okay, very well, Mr. Conway. Mr. Ondrej will give you that one minute I promised. Thank you. With regard – I want to try to address both issues quickly. With regard to the curative instruction, I think the cure was actually in a way worse than the illness because that was when the court extended the idea of searching for the truth, actually making sure that your verdict represents the truth. Let your verdict speak the truth. That was the curative instruction. With regard to the issue of truthfulness and the idea that the jailhouse snitch, Antoine Jackson, that the issue was just whether is he telling the truth. Was he truthful or was he not truthful? You, the jury, should decide that. Or the real question, though, is do we have some doubt, do we have some reasonable doubt about whether he was truthful because he came forward with his confession just after he was charged federally, his charges went federal. And finally, I just want to point out how this instruction sort of interplayed with these improper closing arguments because defense counsel felt the need to try to take a preemptive strike on the instruction when he made his argument and predicted that the prosecutor would raise that in his closing rebuttal. The prosecutor did not do that. He then made all these improper remarks. But then the cure was the court gave the instruction, which is worse than the prosecutor saying that the court gave the instruction that defense counsel predicted the prosecutor would make. So thank you. Okay, Mr. Ondrej, thanks to you. Mr. Conway, again, thanks to you. We appreciate your advocacy. We'll take the appeal under advisement.